

**SIGNED this 28th day of January, 2015.**

_____

**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HOWARD KIRK and | § | No. 11-11556 |
| COURTNEY KIRK, | § | |
| Debtors. | § | Chapter 7 |
| | § | |
| | § | |
| | § | |
| SCHWERTNER BACKHOE | § | |
| SERVICES, INC. | § | |
| Plaintiff, | § | |
| | § | Adv. Proc. No. 11-01239 |
| v. | § | |
| | § | |
| HOWARD KIRK, | § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION</u>**

In this case, a creditor seeks attorney's fees for prosecuting a nondischargeability action involving a diversion of construction funds. The Court awards $12,420 of the attorney's fees requested, as they are authorized by a Texas statute, and determines that the fees awarded are

nondischargeable, as they arise from or are on account of conduct that resulted in a nondischargeable debt.[1]

## I.   JURISDICTION

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334, and venue is proper under 28 U.S.C. § 1409(a).[2] As far as constitutional authority, nondischargeability actions were not "the stuff of the traditional actions at common law tried by the courts at Westminster in 1789."[3] To the contrary, nondischargeability actions "flow from a federal statutory scheme."[4] Thus, the Court has constitutional authority to enter a final judgment.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A. Dimension failed to pay Schwertner Backhoe for services performed on a construction project.

Defendant Howard Kirk ("Kirk") owned Dimension Builders, Inc. ("Dimension"), which was hired as a contractor on a home construction project for Steven and Betsy Heinrich (the "Escalera Project"). In October 2007, Dimension hired Plaintiff Schwertner Backhoe Services, Inc. ("Schwertner Backhoe") as a subcontractor on the Escalera Project. Schwertner Backhoe completed all of its work on the Escalera Project and invoiced Dimension under the contract for $10,200. Dimension was paid by the Heinrichs but never reimbursed Schwertner Backhoe.[5] Dimension then shut down its business operations in December 2007.[6]

---

[1] The Court has considered the submissions of the parties, oral arguments and statements of counsel, and the relevant law. In particular, the Court has reviewed Plaintiff's Post-Trial Brief (ECF No. 107), Defendant's Post-Trial Brief (ECF No. 106), Plaintiff's Application for Attorney's Fees (ECF No. 110, the "Fee Application") and Defendant's Response to the Fee Application (ECF No. 111).

[2] *See* 28 U.S.C. § 157(b)(2)(I); *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473 (5th Cir. 2009).

[3] *Stern v. Marshall*, 131 S.Ct. 2594, 2609 (2011) (quoting *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982) (Rehnquist, J., concurring in judgment)).

[4] *Stern*, 131 S.Ct. at 2614.

[5] ECF No. 86 at 2.

[6] ECF No. 86 at Ex. A.

Schwertner Backhoe then filed a lawsuit in Williamson County District Court in January 2009 to obtain payment for its work on the Escalera Project.[7] In that suit, Schwertner Backhoe sought, among other things, to recover from the Kirks directly under Chapter 162 of the Texas Property Code ("Texas Construction Trust Fund Act") which, in some circumstances, allows subcontractors to recover directly from contractors and their controlling owners.[8] Schwertner Backhoe also sought pre- and post-judgment interest, exemplary damages and attorney's fees under section 38.001 of the Texas Civil Practice and Remedies Code.[9] A motion for default judgment was pending when Kirk filed for bankruptcy on July 25, 2011.[10]

**B. Kirk's bankruptcy and this adversary proceeding were filed.**

Two months after the Kirks filed their Chapter 7 petition, Schwertner Backhoe filed this adversary proceeding.[11] Echoing the allegations made in state court, Schwertner Backhoe argued that Kirk's liability on the Escalera Project debt should not be discharged under section 523(a)(4) of the Bankruptcy Code on the basis that Kirk's failure, as Dimension's controlling owner,[12] to pay Schwertner Backhoe constituted defalcation while acting in a fiduciary capacity.[13] Schwertner Backhoe also sought recovery of reasonable attorney's fees and costs related to the adversary proceeding under section 38.001 of the Texas Civil Practice and Remedies Code, and under sections 28.005 and 53.156 of the Texas Property Code.

---

[7] ECF. No. 86 at Ex. A.

[8] *See generally* Tex. Prop. Code Ann. §§ 162.001, 162.002 (2014).

[9] ECF. No. 86 at Ex. A.

[10] ECF No. 86 at Ex. B.

[11] In April 2012, the Court granted a take-nothing summary judgment in favor of Courtney Kirk, leaving Howard Kirk as the sole Defendant. ECF No. 21.

[12] Kirk was the 100% stockholder and in complete control of Dimension. *See* ECF 86 at Ex. D, 22-24.

[13] "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). All "section" citations refer to the Bankruptcy Code unless otherwise stated.

**C. After eighteen months of mostly agreed continuances, Kirk was deposed in November 2013.**

For several months at the start of this adversary proceeding, the parties filed numerous joint motions seeking additional time to conduct and conclude discovery.[14] On June 28, 2012, Schwertner Backhoe served Kirk with its First Notice of Deposition and Subpoena including a request for production of documents.[15] Kirk failed to respond to the request and the deposition did not proceed as scheduled. On September 11, 2012, Schwertner Backhoe served Kirk with a second notice, seeking production of the documents "immediately" and rescheduling the deposition to October 5, 2012.[16] Schwertner Backhoe then escalated its efforts to get the requested discovery by filing a Motion to Compel and for Sanctions.[17]

Yet the deposition did not happen on October 5, 2012.[18] The parties again attempted to reschedule the deposition for November 2012, and sought a continuance from the Court on the pending Motion to Compel and for Sanctions.[19] The Court mooted the Motion to Compel on November 14, 2012 (because the documents were ultimately produced) and denied the request for sanctions.[20] After escaping this close brush with the courtroom, the parties again drew out the litigation process with numerous agreed motions to extend the trial and pretrial deadlines.[21]

Finally, on November 26, 2013, over a year after serving the first deposition notice, and after serving seven additional notices, Schwertner Backhoe was able to take Kirk's deposition.

---

[14] *See* ECF Nos. 20, 23, 29, 31 and 33.

[15] ECF No. 37 at Ex. A.

[16] ECF No. 37 at 2 and Ex. B.

[17] ECF No. 37.

[18] There is some debate about the rescheduled deposition date and whether the documents should have been produced at or before the deposition. Kirk filed a response on October 8, 2012 stating that he did show up for the October 5 deposition, and stating that it was Schwertner Backhoe who failed to appear. ECF No. 40. According to Kirk, Schwertner Backhoe told him that the deposition was cancelled because the documents were not produced as requested. ECF No. 40. Kirk, however, was not under the same impression and said he appeared at the deposition with the requested documents. ECF No. 40.

[19] ECF No. 41.

[20] ECF No. 49.

[21] *See* ECF Nos. 51, 53, 57, 60, 65, 68, 71, 78, 81 and 84.

This long-delayed deposition proved crucial, as Kirk conceded liability on the Escalera Project debt.[22] Thereafter, Schwertner Backhoe filed a motion for summary judgment.[23] The Court denied this motion in April 2014 and set the matter for trial.[24]

### D. The trial: Kirk conceded to nondischargeability of the debt but the issue of attorney's fees remains.

Shortly before the July 2014 trial, and three years after this suit was filed, Kirk conceded the nondischargeability of the Escalera Project debt under section 523(a)(4).[25] As a result, the sole disagreement between the parties at trial was the amount and nondischargeability of the attorney's fees sought by Schwertner Backhoe. A bench trial was held on July 10, 2014, at which time the parties made only legal arguments on the fee issues, and the matter was taken under advisement.

Both Schwertner Backhoe and Kirk filed their post-trial briefs on July 31, 2014.[26] On September 15, 2014, the Court held a status hearing and instructed the Schwertner Backhoe to file its Application for Attorney's Fees (the "Fee Application") and a supporting affidavit. Ten days later, the Fee Application was filed seeking attorney's fees of $23,137 (more than two times the amount in controversy) incurred from March 2012 to August 2014.[27] The Fee Application included an affidavit by Guillermo Ochoa-Cronfel, Schwertner Backhoe's lead counsel, a chronological spreadsheet outlining the attorney's fees and invoices and time records in support of the fees.[28] Kirk then filed his response, providing detailed objections to certain of Mr.

---

[22] *See* ECF Nos. 87 at Ex. D, pp. 45-47, 99 at 2-3, 106 and 107.

[23] ECF No. 87.

[24] ECF No. 100.

[25] ECF Nos. 86, 106, and 107. By failing to reference claims under sections 28.005 and 53.156 of the Texas Property Code in its post-trial brief, Schwertner Backhoe has dropped that claim as a basis for recovery of attorney's fees.

[26] ECF Nos. 106 and 107.

[27] ECF No. 110 at Ex. A.

[28] ECF No. 110 at Ex. A. and Ex. B.

Cronfel's contemporaneously recorded time records.[29]

### III.    ANALYSIS

**A.  Attorney's fees incurred in prosecuting a section 523 action can be recovered and declared nondischargeable if the fees are (1) allowed by statute or contract and (2) arise from or are on account of the conduct that resulted in a nondischargeable debt.**

Under the "American Rule," each party pays its own attorney's fees arising out of litigation.[30] An exception exists, however, when specific authority granted by statute or contract – a so-called "fee-shifting" provision – states otherwise.[31] Since the Bankruptcy Code does not address whether creditors can recover attorney's fees in nondischargeability cases,[32] they can only do so if allowed by another statute or by contract.

The Fifth Circuit ruled in *Jordan v. Southeast National Bank (In re Jordan),*[33] that creditors can recover attorney's fees if there is a contractual or statutory right to fees under state law. In *Jordan,* a loan document granted attorney's fees to the creditor following a default by the debtor. The court first determined that this was a valid contractual claim for attorney's fees under state law.[34] The court then held that the fees were nondischargeable, stating that "[section] 523(a)(2)(B) excepts from discharge the whole of any debt incurred by use of a fraudulent

---

[29] ECF No. 111.

[30] *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 247 (1975).

[31] *Id.* at 263. *Key Tronic Corp. v. United States,* 511 U.S. 809, 819 (1994). *See also Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 311 (Tex. 2006).

[32] In certain circumstances, debtors who are successful in section 523 actions can recover attorney fees. 11 U.S.C. § 523(d) provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

[33] 927 F.2d 221, 226-27 (5th Cir. 1991) *overruled on other grounds*, *Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257 (5th Cir. 1993).

[34] *Id.* at 226-27.

6

financial statement, and such a debt includes state-approved contractually required attorney's fees."[35] A year later, in *Luce v. First Equipment Leasing Corp. (In re Luce),*[36] the Fifth Circuit followed *Jordan* in ruling that attorney's fees could be awarded in a nondischargeability case if authorized by pre-petition agreement.[37]

On the question of whether fees, once properly awarded, can be declared nondischargeable, the Supreme Court answered in the affirmative in *Cohen v. de la Cruz.*[38] In *Cohen*, the Supreme Court held that nondischargeable "debt" in a proceeding under section 523(a)(2)(A) encompasses not only the debt created by a misrepresentation, but also punitive damages and an award of attorney's fees.[39] The Supreme Court further determined that the word "debt" as used in other parts of section 523, including section 523(a)(4), should be construed the same way.[40] The Supreme Court reasoned that the term "[d]ebt for" in section 523 includes not only the judgment amount found nondischargeable but also the "debt arising from" and "debt on account of…" the misconduct giving rise to the judgment.[41] In other words, the word "debt" includes any form of loss or damage that can be causally linked to the conduct that gives rise to the "debt" that is excepted from discharge.[42]

---

[35] *Id.* at 226-28 (emphasis omitted) (citing *In re Martin*, 761 F.2d 1163 (6th Cir. 1985)).

[36] 960 F.2d 1277, 1285-86 (5th Cir. 1992).

[37] *Luce* separately addressed pre-petition and post-petition attorney's fees. As to pre-petition attorney's fees, the court stated that "[w]e have not found, nor have the creditors directed our attention to, any cases holding that prepetition attorney's fees are nondischargeable under section 523(a) absent a state court judgment awarding attorney's fees to the creditors." *Id.* at 1285. However, the *Luce* court's limitation on the recovery of pre-petition attorney's fees does not survive *Cohen*, discussed below.

[38] 523 U.S. 213, 223 (1998).

[39] *Id. Cohen* considered parallel provisions in section 523 and the "historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge," and found that "'any debt ... for money, property, services, or ... credit, to the extent obtained by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Id.* (citing § 523(a)(2)(A)). *See also Bertola v. Northern Wisconsin Produce Co., Inc. (In re Bertola)*, 317 B.R. 95, 99-101 (9th Cir. BAP 2004).

[40] *Cohen*, 523 U.S. at 220.

[41] *Id.*

[42] *Light v. Whittington (In re Whittington),* Adv. No. 13-01121, 2014 WL 4163589, at *14-15 (Bankr. W.D. Tex. Aug. 20, 2014).

Fifth Circuit law, while pre-dating *Cohen*, is entirely consistent. As noted above, fees recoverable by contract were found nondischargeable in the *Jordan* case where the debt related to the contract was ruled nondischargeable.[43] Similarly, in *Horton v. Robinson (In re Horton)*[44] the Fifth Circuit stated that "[a]ttorneys' fees are non-dischargeable under section 523 when they 'stem from the same basis' as the non-dischargeable debt."[45] In *Horton*, the debt at issue was nondischargeable as a breach of fiduciary duty, but the attorney's fees at issue were awarded for litigating a breach of contract claim. Because the debt and the award of attorney's fees did not "stem from the same basis," the court denied dischargeability of the fees.[46] Although worded differently, this matches *Cohen*'s requirement that the attorney's fees must be "aris[e] from" or be "on account of" the conduct resulting in the nondischargeable debt.[47]

**B. Texas bankruptcy courts have provided additional guidance on what is required for an award of attorney's fees to arise from or be on account of conduct that created the debt discharged.**

The "contract or statute" prerequisite to the recovery of attorney's fees has been reiterated by numerous bankruptcy courts in Texas.[48] Nonetheless, even with a statutory or contractual basis for an award of attorney's fees, these courts have refused to rule that the fees

---

[43] *Jordan,* 927 F.2d at 227.

[44] No. 95-10023, 1996 WL 255304 (5th Cir. May 3, 1996).

[45] *Id.* at *5 (internal citation not provided).

[46] *Id.*

[47] *Cohen*, 523 U.S. at 220. *See also Gober v. Terra+Corp. (In re Gober),* 100 F.3d 1195, 1208 (5th Cir. 1996) (holding "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable [based on conduct in section 523]…the attorney's fees and interest accompanying compensatory damages [resulting from that conduct], including post-judgment interest, are likewise nondischargeable."). *See also Stokes v. Ferris*, 150 B.R. 388, 393 (W.D. Tex. 1992) *aff'd sub nom., Ferris v. Stokes (In re Stokes)*, 995 F.2d 76 (5th Cir. 1993) ("[A]ll debts, including statutory damages and legal fees, which flow from the debtor's willful and malicious conduct are nondischargeable.").

[48] *See S.P. Auto Sales, Inc. v. Benites (In re Benites)*, Adv. No. 11-03614, 2012 WL 4793469, at *9 (Bankr. N.D. Tex. Oct. 9, 2012) (no recovery of attorney's fees in a section 523 action because the relevant Texas statute does not allow attorney's fees on a fraud claim); *Kelly v. Kelly (In re Kelly),* 385 B.R. 877, 884 (Bankr. S.D. Tex. 2008) ("[a]ttorney's fees are recoverable under section 523 only if Plaintiffs have a statutory or contractual right"); and *Wittig Grass Sales, LLC v. Cimarolli (In re Cimarolli),* Adv. No. 04-03250, 2006 WL 2090212, at *6 (Bankr. S.D. Tex. July 11, 2006) ("[t]he Bankruptcy Code does not provide for attorney's fees for dischargeability complaints" and without a specific fee-shifting statute, parties must bear their own costs).

are nondischargeable where the statute or contract providing for fees was not the basis for denying discharge. In *Neo Ventures, LLC v. Hamann (In re Hamann)*,[49] the court denied the discharge of certain debt where the debtor made misrepresentations in connection with an investment. Even though the notes evidencing the investment provided for attorney's fees in the event of default, the court held that the attorney's fees were not included in the nondischargeable debt.[50] The court reasoned that the "adversary proceeding [was] not an action to collect upon the notes, but rather an action for fraud against Defendant. Thus, the provisions of the notes are not applicable."[51]

*Tritt v. Tritt (In re Tritt)*[52] puts a finer point on the hurdle that the creditor must clear to receive a nondischargeable award of attorney's fees: that the fee-shifting statute or contract award fees for the specific actions taken to establish the nondischargeability of the debt. In *Tritt*, the court held that pre-petition awards of attorney's fees by a family court were nondischargeable under section 523(a)(15) as "debt" owed "to a spouse" within the language of that section.[53] However, the *Tritt* court concluded that the fees incurred in establishing the nondischargeability of those fees were not themselves nondischargeable, because the statute awarding fees does not "contemplate" nondischargeability actions:

> While [section] 106.002 of the Texas Family Code created a statutory exception to the American Rule by providing for a recovery of attorney's fees necessarily incurred by a party in a suit affecting the parent-child relationship, that exception cannot be extended to authorize a recovery of additional fees under the statute

---

[49] Adv. No. 09-01164, 2010 WL 2985887, at *7-8 (Bankr. W.D. Tex. July 27, 2010).

[50] *Id.*

[51] *Id.* at 7. *See also O'Brien v. Hartnett (In re Hartnett),* Adv. No. 11-05010, 2011 WL 6210625, at *5-6 (Bankr. W.D. Tex Dec. 14, 2011) (attorney's fees sought under contract not included in nondischargeable debt where conduct leading to loss of discharge was a misrepresentation) and *Franklin Bank, S.S.B. v. Barnes (In re Barnes)*, 369 B.R. 298, 311-12 (Bankr. W.D. Tex. 2007) (finding that attorney's fees are not allowed "in every dischargeability cause of action where there is a contractual provision allowing attorney's fees. This is especially true where the non-dischargeable injury does not relate specifically to the contract.").

[52] Adv. No. 12-04186, 2014 WL 1347763, at *8-9 (Bankr. E.D. Tex. Apr. 4, 2014).

[53] *Id.* at *8.

when such fees are incurred, not in such a suit, but rather in an action seeking a dischargeability determination in a bankruptcy court—a scenario that the cited fee-shifting statute under Texas law simply does not contemplate.[54]

On the other hand, *Ward Family Foundation v. Arnette (In re Arnette)*[55] offers a broader interpretation of a contractual fee-shifting provision. In that case, a contract provided for the recovery of attorney's fees for "all costs of collection and enforcement."[56] The court held that fees for prosecuting a section 523 action could be allowed and declared nondischargeable on the grounds that prosecuting the section 523 action "contributed directly" to the effort to "collect and enforce" on the notes in question.[57]

### C. Application of Supreme Court, Fifth Circuit and bankruptcy court cases to Schwertner Backhoe's request for attorney's fees.

#### 1. Schwertner Backhoe can recover attorney's fees for establishing its right to recover for labor performed, but not for establishing liability under the Texas Construction Trust Fund Act or defalcation under section 523.

In this case, there is no contractual right to recover attorney's fees. Thus, the only way for Schwertner Backhoe to recover fees from Kirk is by statute.[58] The statute chosen by Schwertner Backhoe is section 38.001(2) of the Texas Civil Practice and Remedies Code, which allows a

---

[54] *Id.* at \*9. Section 106.002 of the Texas Family Code provides, in relevant part:

> (a) In a suit under this title (i.e. in a suit affecting a parent-child relationship), the court may render judgment for reasonable attorney's fees and expenses and order the judgment and postjudgment interest to be paid directly to an attorney.
> (b) A judgment for attorney's fees and expenses may be enforced in the attorney's name by any means available for the enforcement of a judgment for debt.

Tex. Fam. Code Ann. § 106.002 (2014). Yet, a broader interpretation seems possible. The "cited fee-shifting statute," section 106.002, does say that a "judgment for attorney's fees and expenses may be enforced" just like any other debt. Enforcing that judgment in a nondischargeability action could be considered a "suit under this title (i.e. in a suit affecting a parent-child relationship)" and thus covered by the fee-shifting statute. The narrower view taken by *Tritt* – that the statute or contract contemplate nondischargeability suits – would significantly restrict fee recovery, as there are likely very few, if any, statutes or contracts that specifically list nondischargeability actions as grounds for fee-shifting.

[55] Adv. No. 10-03062, 2011 WL 3651294, at \*6 (Bankr. N.D. Tex. Aug. 18, 2011).
[56] *Id.* at \*3.
[57] *Id.*
[58] *See Key Tronic*, 511 U.S. at 819 and *Tony Gullo Motors*, 212 S.W.3d at 311.

prevailing party to recover reasonable attorney's fees in an action for labor performed.[59] In particular, Schwertner Backhoe seeks to recover its fees for establishing the debt for labor performed on the Escalera Project. However, Schwertner Backhoe further argues that section 38.001(2) awards fees not just in actions for labor performed, but also in actions alleging a misapplication of trust funds under the Texas Construction Trust Fund Act.

The Texas Construction Trust Fund Act makes controlling directors or officers of a contractor personally liable when the contractor fails to pay its subcontractor for labor and materials.[60] This statute does not, however, mention recovery of attorney's fees in such actions.[61] Although the Texas Construction Trust Fund Act could be viewed as a statutory basis for recovery of tort or fraud damages, section 38.001 does not provide for attorney's fees in actions based in tort or fraud.[62] Consequently, Texas appellate courts have disagreed about whether to allow section 38.001(2) to serve as a mechanism for recovery of attorney's fees in litigating violations of the Texas Construction Trust Fund Act.

On one hand, *Direct Value, L.L.C. v. Stock Bldg. Supply, L.L.C.*[63] and *Perry & Perry Builders, Inc. v. Galvan*[64] from the Seventh Court of Appeals in Amarillo and Third Court of Appeals in Austin, respectively, determined that attorney's fees were "available for a claim that construction trust funds were misapplied if the relief requested is compensation for work

---

[59] Tex. Civ. Prac. & Rem. Code Ann. § 38.001(2) (2014) and *Green Int'l., Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997). *See also Kinkaid v. Kinkaid (In re Kinkaid),* 445 B.R. 731, 741 (Bankr. N.D. Tex. 2011) (citing to *Green International* in addressing the recovery of attorney's fees under section 38.001 in an adversary proceeding in bankruptcy court).

[60] Tex. Prop. Code Ann. § 162.001, et. seq.

[61] §§ 162.001, 162.031(a).

[62] *Hamann,* 2010 WL 2985887 at *7 (citing *MBM Fin. Corp. v. Woodlands Operating Co., L.P.,* 292 S.W.3d 660, 666-67 (Tex. 2009)).

[63] 388 S.W.3d 386 (Tex. App.—Amarillo 2012, no pet.).

[64] No. 03-02-00091-CV, 2003 WL 21705248, at *8-9 (Tex. App.—Austin July 24, 2003, no pet.) (mem. op.).

performed or materials supplied."[65] These courts reasoned that "[a]ttorney's fees are recoverable on a quantum meruit claim because such claims fall within a general statute [section 38.001] authorizing recovery of attorney's fees 'if the claim is for: … (2) performed labor....'"[66]

On the other hand, in *Larrison v. Catalina Design*,[67] the Second Court of Appeals in Fort Worth found there was a misapplication of trust funds under the Texas Construction Trust Fund Act, but ruled against the recovery of attorney's fees. The court stated, "[m]isapplication of trust funds is not one of the causes listed in section 38.001, and therefore the section does not apply to [plaintiff's] claims against Larrison."[68]

This Court has previously stated that, "[o]n [a] close question of state law, the Court [will not] substitute its own judgment for that of a Texas appellate court that has spoken recently and persuasively on th[e] precise question"[69] Here, however, the *Perry* and *Direct Value* courts have not spoken "persuasively" on the "precise question." The *Perry* court actually reversed and remanded the judgment against Perry on the trust fund theory, and while "concluding" that attorney's fees could be awarded under that theory, nonetheless reversed the award of attorney's fees as well.[70] *Direct Value* then relied on the dicta in *Perry,* which it characterized as "precedent."[71]

---

[65] *Perry*, 2003 WL 21705248 at *8-9; *Direct Value*, 388 S.W.3d at 394 (holding "[w]e adopt the position of the Austin Court of Appeals and find that the trial court did not err in awarding [defendant] its attorney's fees incurred in the process of litigating its claim for misapplication of trust funds.").

[66] *Perry*, 2003 WL 21705248 at *8-9. *See also Direct Value*, 388 S.W.3d at 394.

[67] No. 02-10-00167-CV, 2011 WL 582730, at *1 (Tex. App.—Fort Worth Feb. 17, 2011, no pet.) (mem. op.).

[68] *Larrison*, 2011 WL 582730 at *5.

[69] *In re AMRCO, Inc.*, 496 B.R. 442, 449 (Bankr. W.D. Tex. 2013).

[70] *Perry*, 2003 WL 21705248 at *8.

[71] *Direct Value*, 388 S.W.3d at 394. *Perry* was decided by the Third Court of Appeals in Austin. *Id.* Schwertner Backhoe's state court lawsuits were filed in the 368th District Court of Williamson County, which would be appealed to the same court of appeals. *Direct Value* was originally appealed to the Third Court of Appeals in Austin but was transferred to the Seventh Court of Appeals in Amarillo under the Texas Supreme Court's authority to transfer cases from one court of appeals to another at any time there is good cause to transfer. *Direct Value,* 388 S.W.3d at 394 (the Texas Supreme Court has used this statute to pursue docket equalization efforts) (citing Tex.

This Court declines to follow the *Perry* dicta and its adoption by *Direct Value*.[72] First, following *Perry* would extend a statutory right to recovery for performed labor to a tort-like action for misappropriated funds, which is well beyond the language of section 38.001(2). The Court is aware of the statutory directive to construe chapter 38 of the Texas Civil Practice and Remedies Code liberally.[73] But a directive to construe a statute liberally is not a license to rewrite it. Second, the Texas Construction Trust Fund Act itself contains no fee-shifting provision. Third, while the *Direct Value* court acknowledged the split of authority, it distinguished *Larrison* on the bases that the plaintiff did not bring a contract-based action, and did not seek recovery under section 38.001. In fact, however, the *Larrison* plaintiff *did* bring a contract action against the contractor, and the *Larrison* court applied section 38.001 to the same facts at issue here, and squarely held that no fees could be recovered.[74]

Schwertner Backhoe's recovery of attorney's fees is accordingly limited to those incurred in establishing liability for labor performed on the Escalera Project. Schwertner Backhoe established its claim for labor performed on the Escalera Project when Kirk admitted to the underlying debt in his November 2013 deposition testimony. Since most of the fees incurred up to that point in time were spent simply trying to get Kirk deposed, the Court will attribute all of those fees to establishing the claim for labor performed, and allow them to the extent they are reasonable. But the fees incurred after the November 2013 deposition are not recoverable

---

Gov't Code Ann. § 73.001 (2014)). The *Direct Value* court then stated it "must decide the case in accordance with the precedent of the transferor court…[and] [b]ased upon this rule, as well as sound legal reasoning, we adopt the position of the Austin Court of Appeals and find that the trial court did not err in awarding [defendant] its attorney's fees incurred in the process of litigating its claim for misapplication of funds." *Id.* (citing Tex. R. App. P. 41.3).

[72] *See Kendall v. Pladson (In re Pladson),* 35 F.3d 462, 466 (9th Cir. 1994) ("Federal courts are not bound by dicta of state appellate courts.") and *McKenna v. Ortho Pharm. Corp.,* 622 F.2d 657, 662 (3d Cir. 1980) ("a federal court should be circumspect in surrendering its own judgment concerning what the state law is on account of dicta").

[73] *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.005 (2014) and *1/2 Price Checks Cashed v. United Auto. Ins. Co.,* 344 S.W.3d 378, 388 (Tex. 2011).

[74] *Larrison*, 2011 WL 582730 at *6.

because Mr. Cronfel's time was spent establishing Kirk's liability under the Texas Construction Trust Fund Act and this task is not included within the fee-shifting language of section 38.001(2).

Schwertner Backhoe might argue that it should recover fees for establishing Kirk's defalcation, reasoning that fees should be awarded under *Cohen* for establishing the nondischargeability of the debt for labor performed. But fees cannot be awarded for litigating defalcation in this case because doing so is essentially the same as establishing Kirk's liability under the Texas Construction Trust Fund Act; both determinations are predicated on the same facts – that Kirk was a fiduciary, and that he failed to handle funds properly. Put another way, this aspect of what Schwertner Backhoe had to prove is an action for which the Texas legislature has not shifted fees. *Cohen* renders properly awarded fees nondischargeable; it does not provide an independent basis for awarding fees.[75]

### 2. Mr. Cronfel's fees are generally reasonable, subject to a few exceptions.

The Fifth Circuit has made it clear that Texas law governs the reasonableness of fees awarded where Texas law governs the rule of decision.[76] In *Arthur Anderson & Co. v. Perry Equipment Corp.*[77] the Texas Supreme Court identified eight factors to examine in recovery of reasonable attorney's fees.

1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

---

[75] *Tritt*, 2014 WL 1347763 at *7 (citing *Headrick v. Atchison (In re Atchison),* 255 B.R. 790 (Bankr. M.D. Fla. 2000) ("It is clear that Cohen does not itself create an independent right to attorney's fees for the benefit of a party who prevails in a Section 523 dischargeability proceeding.").

[76] *Mathis v. Exxon Corp.,* 302 F.3d 448, 461 (5th Cir. 2002).

[77] 945 S.W.2d 812, 818 (Tex. 1997).

3) the fee customarily charged in the locality for similar legal services;

4) the amount involved and the results obtained;

5) the time limitations imposed by the client or by the circumstances;

6) the nature and length of the professional relationship with the client;

7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.[78]

In his response to Schwertner Backhoe's Fee Application, Kirk raises detailed objections to certain of Mr. Cronfel's time entries. After a careful review of Mr. Cronfel's Affidavit and time entries, the Court concludes that the fees are reasonable, with a few exceptions.

The Court finds several of Kirk's objections unfounded. First, Kirk objects to Mr. Cronfel's preparation of the Motion to Compel, reply to Kirk's Response to the Motion to Compel and the preparation for that hearing because the Motion was denied.[79] However, that motion was not denied; in fact, the motion was mooted.[80] While the parties have spared the Court the details of this squabble, discovery disputes are a part of litigation, and do not, absent more explanation, necessarily reflect fees unreasonably incurred. As a result, the Court rejects this objection and finds those fees reasonable.

Second, Kirk generally objects to the amount of attorney's fees because the amount in controversy was only $10,200 and the attorney's fees are more than twice that amount. Kirk also objects to several of Mr. Cronfel's time entries related to drafting joint motions and scheduling

---

[78] *Id.* (quoting Tex. Disciplinary Rules Prof'l Conduct R. 1.04, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art X, § 9)). *See also Arnette,* 2011 WL 3651294 at *4-5 (applying Texas law to reasonableness of attorney's fees in bankruptcy proceeding).

[79] ECF No. 111 at 2.

[80] ECF No. 49.

orders.[81] On the surface, these objections appear to have some merit; however, Kirk fails to address the numerous continuances and agreed motions to extend the deadlines that the parties negotiated in this case and has offered no explanation for these delays. From the Court's review of the time records, the numerous agreed continuances were a significant reason for the delay and expense of the case. Because Mr. Cronfel was necessarily required to spend time drafting and negotiating agreements with opposing counsel to accomplish these continuances, the Court cannot find that these fees were not reasonable. Moreover, Kirk could have saved both sides considerable expense and time by conceding to liability and nondischargeability at the outset, rather than waiting until the eve of trial. Consequently, the Court rejects Kirk's objection on this basis as well.[82]

In reviewing Kirk's remaining objections, the Court agrees that many of the entries could use additional detail, but does not have a problem with most of them because the context of the entries makes clear the need for and reasonableness of the fees in question.[83] The Court does have a problem with the two entries dated 2/19/13 and 2/20/13 and labeled "Research." No explanation has been provided for these entries, and the context here is not helpful, so these

---

[81] ECF No. 111 at 2.

[82] Kirk also refers to time entries in June, July and August 2014 and objects on the grounds that "no recovery for time spent seeking to recover attorney's fees per ASARCO decision." ECF No. 111 at 2. This is a cryptic reference, because there is more than one "ASARCO" case relevant to the award of attorney's fees and the Court will not guess which case Kirk had in mind. This ambiguous reference is not sufficient to deem this claim argued. If Kirk wished to raise an argument based on case law, a full citation, pin cite and detailed explanation would be required. Nevertheless, as these fees were incurred after the liability on the debt was established, Kirk's objections to these fees on other grounds are irrelevant. Also, to the extent Kirk is referring to the Fifth Circuit's recent case in which fees were not allowed for defending a fee application, *ASARCO, L.L.C. v. Jordan Hyden Womble Culbreth & Holzer, P.C. (In re ASARCO, L.L.C.),* 751 F.3d 291, 299-300 (5th Cir. 2014) *cert granted,* 135 S.Ct. 44 (2014), that case does not apply – the holding in that case was premised on the fact that the applicants were estate professionals, which Schwertner Backhoe's attorney is not. Indeed, the Fifth Circuit distinguished the fees at issue there from fees awarded under fee-shifting statutes. *Id.* at 300-01.

[83] Tex. Civ. Prac. & Rem. Code Ann. § 38.004 (2014) (providing that "the court may take judicial notice of…usual and customary attorney's fees…in a proceeding before the court").

16

amounts (totaling $675) will be disallowed. Accordingly, and with the exceptions noted, Kirk's remaining objections are denied.

### 3. All fees awarded are also nondischargeable.

All of the fees incurred by Schwertner Backhoe – those incurred in establishing a claim for labor performed, those incurred in establishing Kirk's defalcation under the Texas Construction Trust Fund Act – "arise from" or are "on account of" conduct that created an underlying claim that has been found nondischargeable.[84] But only fees that are allowed – in this case, $12,420 – can be included within the debt excepted from discharge.

## IV.   CONCLUSION

The Court awards $12,420 in attorney's fees, and this amount will be added to the stipulated judgment of $10,200 for a total nondischargeable judgment of $22,620. Judgment will be entered accordingly.

---

[84] *See Cohen*, 523 U.S. at 220-23 and *Jordan*, 927 F.2d at 226-27.